OPINION
{¶ 1} Plaintiff-appellant Stephen Arthur ("Stephen") appeals the November 26, 2002 Final Judgment Entry of the Delaware County Court of Common Pleas, which granted judgment in favor of defendants-appellees Richard Arthur ("Richard") and Elizabeth Schoenegge ("Beth") on Stephen's complaint for breach of contract, and granted judgment against Stephen and in favor of Richard and Beth on their counterclaim.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 24, 2001, Stephen filed a complaint in the Delaware County Court of Common Pleas for breach of contract and unjust enrichment against Richard and Beth. Appellees filed a timely answer and counterclaim. The matter proceeded to trial before a magistrate on July 9 and 10, 2002. Prior to the parties' filing of written closing arguments as ordered by the magistrate at the conclusion of the trial, the magistrate died unexpectedly. Via Judgment Entry filed August 1, 2002, the trial court granted the parties an extension of time for filing their closing arguments. The judgment entry further provides, "[The closing arguments] are to be presented to the undersigned Judge due to Magistrate Lord's demise. Both parties agreed to submit the written transcript and closing argument to the Judge for final determination of this matter." August 1, 2002 Judgment Entry Granting Extension of Time for Written Closing Arguments.
 {¶ 3} The record reveals the following. Richard and Beth owned real property located at 7907 Penn Road, Ostrander, Ohio. Richard approached Stephen, his brother, about Stephen's building a home for him and Beth on the property. Stephen is a sole-proprietor/contractor and has been so for over thirty-five years. Discussions relative to the building project, including deed restrictions, took place over a period of four to six weeks after which a final agreement was reached.
 {¶ 4} Financing for the construction was arranged through Fidelity Federal Savings Loan. Stephen had dealt with the bank for ten years. The specific contact person was Ed Planisek. On or about August 1, 1999, Stephen prepared a proposal/contract to submit to the bank, as such was required for Richard and Beth to obtain a loan. The original proposal/contract was for a total price of $130,000, but the price was reduced to $120,000 before appellees applied for the construction loan. Richard and Beth sought a loan in the amount of $90,000. Upon his receipt of the plans from appellees, Stephen sought and obtained approval from the county for the construction. Stephen also presented copies of the plan to carpenters and materialmen. Stephen began construction on the home in August, 1999.
 {¶ 5} Over the course of the construction, Stephen received over $102,000 through draws from the Fidelity Federal loan and separately from Richard and Beth. Stephen did not complete the project. In May, 2000, Stephen walked off the job because he claimed he was due money.
 {¶ 6} Stephen admitted he failed to complete the furnace and air conditioning; failed to install electric and water service to the home; failed to pay for interior trim work; failed to purchase plumbing fixtures; failed to purchase carpeting and pay for the installation thereof; failed to pay for the installation of banisters, railings or spindles on the interior stairway, the garage doors, gutters and downspouts, and countertops; failed to paint the interior of the home; and failed to obtain an occupancy permit. Stephen acknowledged there were no written deviations from the original proposal/contract.
 {¶ 7} During his testimony, Richard stated the proposal/contract in the amount of $130,000 was amended to $120,000 immediately before the parties met with Ed Planisek at Fidelity Federal. The proposal/contract and plans were presented to Planisek at the first meeting. Changes to the plans included moving the frontloading garage to a side garage, and deleting a walk-out basement. The plans included a bonus room as such was necessary to meet the deed restrictions requiring a minimum square footage. No change orders were ever executed.
 {¶ 8} Richard testified, although Stephen had incurred lumber charges for the house, Stephen failed to pay the debt, requiring Richard to negotiate with Holmes Lumber to pay the balance due and prevent Holmes Lumber from placing a lien on the property. Richard and Beth paid for the heating and air conditioning system plus an extra $250 to pay off a lien Air Experts had placed on the property. While Stephen had ordered the installation of the heating and cooling system, he failed to pay for the services. Richard and Beth paid over $4,000 for all the paint for the house, the gutters and downspouts and the installation thereof, and paid $1300 for finish carpentry. Richard testified he paid for the carpeting and its installation because Stephen failed to pay for such through the construction proceeds. Appellees paid a stairway specialist to complete the stairway Stephen left unfinished. They also paid for countertops and lighting fixtures as well as the installation thereof. Richard was required to obtain the occupancy permit and pay for that, but failed to do so. The monies for these items came from a home equity line appellees obtained as well as their own personal savings.
 {¶ 9} After the final occupancy permit was issued in July, 2000, appellees moved into the new home. The total cost of the home was $151,397.38. Of this amount, $90,000 come from the construction loan and $30,651.15 came from Richard and Beth's savings. Appellees spent an additional $30,746.23 from the home equity line.
 {¶ 10} Beth testified she expected Stephen to build a completed home for $120,000. A local builder told Richard and Beth he would build the home for $150,000. However, Stephen informed appellees he could build the same home cheaper.
 {¶ 11} Ed Planisek, President of Fidelity Federal, testified he worked for the bank for thirty years. Planisek stated Stephen was a long time customer. Planisek identified trial exhibit AA as the dispersal card regarding the loan at issue herein. Planisek noted he made several of the entries of dispersal, including dispersals to Columbus Wood Products, Delco Water, and Holmes Lumber. Planisek also stated it was his practice to require a property description, plans, off-sets, and the building contract when processing a loan. He recalled the contract was for $120,000, and he had been given a set of plans prior to the approval of the loan.
 {¶ 12} Upon review of the evidence, the trial court found Stephen in default on the contract, and further determined he was not entitled to additional compensation from Richard and Beth. The trial court entered judgment in favor of appellees in the amount of $30,746.23, plus statutory interest and costs. The trial court memorialized its decision via Final Judgment Entry filed November 26, 2002.
 {¶ 13} It is from this judgment entry Stephen appeals, raising the following assignments of error:
 {¶ 14} "I. THE TRIAL COURT ERRED WHEN IT DECIDED THE MATTER ON THE TRANSCRIPT WITHOUT HAVING THE BENEFIT OF HEARING THE TESTIMONY.
 {¶ 15} "II. THE TRIAL COURT ERRED IN NOT FINDING THE DEFENDANTS, APPELLEES IN BREACH OF CONTRACT AND MAKING AN AWARD FOR THE PLAINTIFF ON HIS PRAYER.
 {¶ 16} "III. THE TRIAL COURT'S DECISION IN FAVOR OF THE DEFENDANT'S ON THEIR COUNTERCLAIM IS AGAINST THE PRINCIPALS [SIC] OF CONTRACT LAW AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I. {¶ 17} In his first assignment of error, Stephen maintains the trial court erred in deciding the matter on the transcript and closing arguments without taking oral testimony.
 {¶ 18} As set forth in the Statement of the Facts and Case, supra, the matter was tried for two days before Magistrate Lord. Magistrate Lord died prior to the parties' filing written closing arguments and his issuing a decision. Via Judgment Entry Granting Extension of Time for Written Closing Arguments, the trial court noted, "Both parties agree to submit the written transcript and closing arguments to the Judge for final determination of this matter." Because Stephen agreed to submit the matter to the trial court for final determination on the written transcript and closing arguments, we find he has waived any error in the trial court's proceeding in accordance thereto. Such waiver is further evidenced by the fact once Stephen received the August 1, 2002 Judgment Entry, he failed to object or separately move for a trial de novo. Interestingly, Stephen acknowledges in his brief to this Court, "When it was learned the magistrate died without issuing a decision the last thing anyone wanted was to have a trial de novo." Appellant's Brief at 8.
 {¶ 19} Stephen's first assignment of error is overruled.
 II. {¶ 20} In his second assignment of error, Stephen asserts the trial court erred in failing to find appellees in breach of contract, and failing to award judgment in his favor.
 {¶ 21} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 22} We find there was some competent, credible evidence to support the trial court's finding Richard and Beth were not in breach of the contract, and, as such, Stephen was not entitled to judgment in his favor. Stephen argues the contract set forth a specific draw schedule as to when he would be paid, however, despite this mutual agreement, he was not paid by appellees. The trial court found Stephen admitted he did not finish the job although he received $102,000 from the construction loan and appellees' personal monies. Having found Stephen breached the contract first, Richard and Beth were relieved of their duty to perform under the contract.
 {¶ 23} Stephen's second assignment of error is overruled.
 III. {¶ 24} In his final assignment of error, Stephen contends the trial court's decision in favor of appellees on their counterclaim is against the principles of contract law and is against the manifest weight of the evidence.
 {¶ 25} Again, we find there is some competent, credible evidence to support the trial court's finding. As set forth supra, Stephen and Richard entered into a contract for the construction of a home. The total contract price was $120,000. Although Stephen was paid approximately $102,000, he did not pay a number of subcontractors and materialmen, which required appellees to pay monies out of their personal savings and to obtain a home equity line of credit. Richard and Beth presented copies of their canceled checks to the subcontractors and materialmen, paid after Stephen left the job, which totaled approximately $30,000. Additionally, Planisek testified he made direct payments from the construction loan to Holmes Lumber.
 {¶ 26} Stephen's third assignment of error is overruled.
 {¶ 27} The judgment of the Delaware County Court of Common Pleas is affirmed.
By: Hoffman, J., Gwin, P.J., and Farmer, J. concur.